IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
SEP 26 2016
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES JESSE SANCHEZ, JR.,<br><br>Defendant. | CR 16-40-BLG-SPW<br><br>OPINION & ORDER |

Defendant Charles Jesse Sanchez, Jr., ("Sanchez") is charged with Felon in Possession of a Firearm. (Doc. 1). He has moved to suppress evidence under the Fourth Amendment. (Doc. 15).

On September 16, 2016, the Court held an evidentiary hearing. The Court heard testimony from United States Bureau of Alcohol, Tobacco, Firearms and Explosives Agent Stephen Feuerstein, United States Marshal David Wollschlager, United States Marshal Matthew Brophy, Montana Department of Corrections Probation Officer Jayson Baxter, and Montana Department of Corrections Probation Officer Darren Zent. Having read and reviewed the parties' submissions and having heard the testimony of the witnesses noted above, the Court GRANTS Sanchez's motion.

I. **Statement of Facts.**

1

Around 4:00 PM on December 11, 2015, seven federal agents went to Sanchez's home to arrest him on a federal arrest warrant for violations of federal supervision. Sanchez had previously been convicted of conspiracy to distribute methamphetamine. (Doc. 9). The petition for the arrest warrant alleged Sanchez had missed and failed some random uranalysis tests over the span of two and a half years. (CR 00-114-BLG-SPW-01 Doc. 361).

The agents knocked on the door and Sanchez answered. Without incident, Sanchez was removed from the residence and handcuffed. An agent asked Sanchez if anyone else was in the home. Sanchez informed the agent there was a woman in the back bedroom. Sanchez was then placed in a transport vehicle.

Four agents entered the home to look for the woman. The agents advanced down a hallway with a bedroom at the end. As the agents approached the bedroom, a woman exited the bedroom and presented herself to the agents. Two of the agents placed the woman in handcuffs and removed her from the residence to the front porch. The remaining two agents entered the bedroom. The two agents observed a purse on the ground. The two agents exited the bedroom, checked the rest of the house for occupants, and finding none, exited the residence.

The woman was questioned by an agent on the front porch. She provided a name the agent believed to be false. The two agents that observed a purse in the back bedroom re-entered the home to search the purse for the woman's

2

identification. The agents did not find an identification card in the purse. Instead, the agents found an eyeglass case. One of the agents opened the eyeglass case and observed drug paraphernalia. The agent placed the drug paraphernalia on the bed and then opened the drawer of a nightstand next to the bed. No identification card was found in the nightstand. The agent then worked his way over to a dresser and opened the top drawer. In the drawer, amongst men's underwear and socks, the agent observed a pistol and ammunition. The agent radioed to his colleagues that he found a pistol.

Meanwhile, outside, Sanchez identified the woman as Nicole Half to Probation Officer Baxter. When Probation Officer Baxter asked Sanchez how long Half had been at the residence, Sanchez responded "about a week." Almost simultaneously, on the front porch, Nicole Half truthfully identified herself to the agent questioning her. The agent asked Half how she knew Sanchez, and Half responded she had just met him. The agent asked Half if she lived at the residence, and she said she'd "been staying there for about a week."

Half explained she wasn't initially honest about her identity because she had absconded from her supervision with the Montana Department of Corrections and probably had a warrant out for her arrest. The agent informed Probation Officer Baxter of Half's statements. Probation Officer Baxter called his office and confirmed Half had an arrest warrant for absconding from her supervision.

Probation Officer Baxter then ordered a probation search of the residence. At the time Probation Officer Baxter ordered the probation search, he knew the agents inside had found a pistol in the dresser. The probation search did not uncover any additional evidence.

Sanchez, as part of his federal supervision, was subject to a special condition that he "submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer, at a reasonable time and in a reasonable manner, based on reasonable suspicion of contraband or evidence in violation of a condition of release." (Doc. 25-1).

Half, as part of her state supervision, was subject to a condition that "[u]pon reasonable suspicion, as ascertained by a Probation/Parole Officer, my person, vehicle, and/or residence may be searched at any time, day or night, including my place of employment, without a warrant by a Probation/Parole Officer, ISP Officer or Law Enforcement Officer (at the direction of the Probation/Parole/ISP Officer)." (Doc. 25-2).

## II. Legal Standard.

Warrantless searches inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). There are two general exceptions to the warrant requirement for home searches: exigency and emergency. *U.S. v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005). The emergency exception applies

to emergency situations that threaten life or limb. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). The exigent exception applies when officers have probable cause to believe a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent the destruction of relevant evidence, escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts. *Hopkins*, 573 F.3d at 763.

There is a third exception to the warrant requirement in cases involving a probationer subject to a search condition. A warrantless search of a probationer's home does not violate the Fourth Amendment if, after evaluating the circumstances of the particular case, the Court determines the search was "reasonable." *United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016). In doing so, the Court balances, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy, and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests." *U.S. v. King*, 736 F.3d 805, 808 (9th Cir. 2013) (quoting *U.S. v. Knights*, 534 U.S. 112, 119 (2001)). The probation search condition is "a salient circumstance" in the balancing of interests. *King*, 736 F.3d at 808 (citing *Knights*, 534 U.S. at 118). So, too, is the government's interest in protecting the public from probationer recidivism, discovering criminal activity, and a probationer's successful completion of probation. *King*, 736 F.3d at 809. Before an officer may conduct a warrantless search of a probationer's home,

however, the officer must have probable cause to believe the probationer actually lives at the home searched. *U.S. v. Mayer*, 560 F.3d 948, 957 (9th Cir. 2009).

The constitutionality of the search of Sanchez's home turns on Sanchez's and Half's probationer search exceptions because neither exigent nor emergency circumstances were present when the search occurred.

**A.     The search of Sanchez's home pursuant to Sanchez's status as a probationer does not meet the probation search exception because the agents did not have reasonable suspicion Sanchez was engaged in criminal activity or that the home contained evidence of Sanchez's violations.**

To determine whether the search was reasonable, the Court must weigh Sanchez's privacy interests against the government's legitimate interests. *King*, 736 F.3d at 808.

On one side of the balance is Sanchez's privacy interest. Sanchez, as a probationer, has a lower expectation of privacy than someone who has completed probation or who has never been convicted of a crime. *Lara*, 815 F.3d at 610. But his privacy interest is higher than that of a parolee's. *Lara*, 815 F.3d at 610 (citing *Samson v. California*, 547 U.S. 843, 850 (2006)). And as Sanchez's underlying offense is drug distribution, his privacy interest is higher than probationers convicted of a particularly "serious and intimate" violent offense. *Lara*, 815 F.3d at 610. Thus, although his expectation of privacy is somewhere below probable

cause, it is still substantial. *Lara*, 815 F.3d at 610; *see also Knights*, 534 U.S. at 121.

Turning to Sanchez's search condition, the language permits "U.S. Probation" to conduct searches based on "reasonable suspicion." (Doc. 25-1). The condition does not give other law enforcement, or state probation, permission to search based on that standard. That is an important distinction because, although a probationer's privacy interest is not determined solely by the search condition, the search condition's specific language is given considerable weight. *See King*, 736 F.3d at 810 (upholding suspicionless search of violent probationer subject to a suspicionless search condition); *Lara*, 815 F.3d at 610-11 (suspicionless search of cell phone conducted pursuant to suspicionless search condition was not reasonable because condition did not specifically mention cell phones); *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (construing search condition to apply only to defendant's "residence" because of search condition's "clear and explicit language.") (overruled on other grounds).

On the other side of the balance is the government's legitimate interests in combating recidivism, discovering criminal activity, and the reintegration of probationers. *King*, 736 F.3d at 809. The strength of these interests depends on the degree to which the government has a specific reason to suspect that a probationer is reoffending or jeopardizing his reintegration into the community.

*Lara*, 815 F.3d at 612. The less serious the allegation is, the less strength these interests have in justifying the search. *Lara*, 815 F.3d at 612 (contrasting the *Knights* and *King* probationers, who officers suspected of arson and homicide, respectively, from the *Lara* probationer, who had missed a meeting with his probation officer).

On the balance, the Court holds the search of Sanchez's home pursuant to Sanchez's status as a probationer was unreasonable. Sanchez's nonviolent probationer status, and the specific language of his search condition, required at least some level of suspicion of criminal activity from the agents. The strength of the government's interests do not reduce Sanchez's privacy expectation in his own home to nothing, particularly where the agents were there to arrest Sanchez for missed appointments and missed or failed UAs. It is unnecessary to articulate the precise level of suspicion required here because there isn't a shred of evidence that the agents suspected Sanchez was engaged in criminal activity when the agents arrested Sanchez. Likewise, there is no suspicion the home contained evidence of Sanchez's supervision violations, nor could there be, given the nature of Sanchez's alleged violations. Therefore, the warrantless search of Sanchez's home pursuant to Sanchez's status as a probationer violated the Fourth Amendment.

**B.     The search of Sanchez's home pursuant to Half's status as a probationer does not meet the probation search exception because the agents did not have probable cause to believe Half lived in the home.**

Law enforcement has probable cause to believe an individual lives in a home when "the facts available to them would warrant a person of reasonable caution in the belief." *Florida v. Harris*, 133 S.Ct. 1050, 1055 (2013) (internal quotation and citation omitted). In evaluating whether the government has met this standard, the Court looks to the totality of the circumstances. *Harris*, 133 S.Ct. at 1055.

Here, the government did not have probable cause to believe Half lived in the home. Sanchez told Probation Officer Baxter Half had been there "about a week." Half told the agent interviewing her that she had just met Sanchez and had "been staying there for about a week." The government offered no other evidence to support probable cause: no mail, no key, no claim the home was Half's. These statements, without more, indicate Half was a guest. *See U.S. v. Grandberry*, 730 F.3d 968, 976 (9th Cir. 2013). Therefore, the warrantless search of Sanchez's home pursuant to Half's status as a probationer violated the Fourth Amendment.

### III. Conclusion

For the reasons discussed above, Sanchez's Motion to Suppress (Doc. 15) is GRANTED.

DATED this 26th day of September 2016.

SUSAN P. WATTERS
United States District Judge